UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LAWRENCE G. CAMPBELL,

                              Plaintiff,         **MEMORANDUM AND ORDER**

              v.                                    23-CV-6435 (RPK) (CLP)

MAYOR ERIC L. ADAMS; POLICE
COMMISSIONER EDWARD A. CABAN; CITY
OF NEW YORK; NEW YORK CITY POLICE
DEPARTMENT; POLICE OFFICER ANTHONY
PATTI; and SERGEANT RAYMOND V.
PERSAUD,

                              Defendants.
----------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       *Pro se* plaintiff Lawrence G. Campbell brings this action in connection with an allegedly unlawful search and seizure by police. He asserts claims under 42 U.S.C. § 1983 and various state-law causes of action against the City of New York, the New York City Police Department ("NYPD"), Mayor Eric L. Adams, and former NYPD Commissioner Edward A. Caban as well as NYPD Officer Anthony Patti and NYPD Sergeant Raymond V. Persaud. The City, Adams, Caban, Patti, and Persaud ("moving defendants") have moved to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. to Dismiss (Dkt. #25); Defs.' Ltr. (Dkt. #28). For the reasons explained below, that motion to dismiss is granted.

## BACKGROUND

       The following facts are taken from the amended complaint and are assumed true for purposes of this motion.

       In December 2021, plaintiff filed articles of organization for a "[c]annabinoid hemp retail business" named "Bugzy's Bud spot LLC." Am. Compl. ¶¶ 2–4, 38–43 (Dkt. #6); *see id.* Ex. 3.

1

"Hemp" is generally defined as cannabis with a THC level of 0.3% or less. 7 U.S.C. § 1639o(1). In May 2022, plaintiff received a state retail license to sell hemp from the New York State Office of Cannabis Management. Am. Compl. ¶¶ 5, 43; *see id.* Ex. 1. Plaintiff began operating his business from "a parked bus with the company name on a banner attached to the bus." *Id.* ¶¶ 5–6; *see id.* Exs. 2, 5.

On August 20, 2022, Officers Patti and Persaud (and other NYPD officers) approached the bus while it was parked around Linden Boulevard and 165th Street in Jamaica, Queens and questioned employee Glen Richardson. *Id.* ¶¶ 6, 44, 46–47. Richardson provided the officers with the vehicle's insurance and registration, the retail license, and a certificate of authority to collect sales tax issued by the New York State Department of Taxation and Finance. *Id.* ¶¶ 7, 48–49, *see id.* Ex. 4. Richardson refused to obey the officers' order to exit the bus and denied consent to search it. *Id.* ¶¶ 49–50. "[O]ne of the Defendant Officers then forcefully grabbed Mr. Richardson, pulled him off the [bus,] put him against the wall in front of the vehicle," handcuffed him, and "placed [him] . . . into the back of the police vehicle." *Id.* ¶¶ 53, 55. "[T]en to fifteen" NYPD officers entered the bus and "rummage[ed] through [plaintiff's] property." *Id.* ¶ 54. A "Defendant Officer" acknowledged being shown the retail license and certificate of authority. *Id.* ¶¶ 56–57. But that officer stated that the documents were fake and ordered that Richardson be arrested and the bus be seized. *Id.* ¶¶ 56–58.

Plaintiff's bus and Richardson were transported to the 113th Precinct, and several items were removed from the bus. *Id.* ¶¶ 59–60. "After several hours . . . defendant officers advised [plaintiff] that they were going to release" his bus and Mr. Richardson but not the items removed from the bus. *Id.* ¶ 63. Richardson was given "two Criminal Court Appearance tickets[:] one for unlicensed vendor and another for unlawful possession of cannabis." *Id.* ¶ 8.

2

Plaintiff further alleged that the search and seizure of the bus was "without a warrant" and "without probable cause or legal justification," *id.* ¶¶ 6, 45, and that defendants Mayor Adams and Commissioner Caban "did encourage police officers to confiscate and arrest alleged unlawful sellers [of] cannabis without distinguishing that not all cannabis [is] a controlled substance," *id.* ¶ 69.

Plaintiff filed this action in August 2023, *see* Compl. (Dkt. #1), and filed the amended complaint soon after under Federal Rule of Civil Procedure 15(a)(1), *see* Am. Compl.  The amended complaint asserts the following causes of action against all defendants: (1) violations of the Fourth and Fourteenth Amendments under Section 1983, *id.* ¶¶ 67–79; (2) violations of the New York State Constitution, *id.* ¶¶ 80–84; (3) common-law claims of negligence, trespass to personal property, trover, negligent infliction of emotional distress, negligent hiring, retention, training and supervision, and failure to intervene, *id.* ¶¶ 85–119; and (4) violations of New York City Administrative Code § 8-802, *id.* ¶¶ 120–44.  Plaintiff seeks compensatory and punitive damages, attorney fees and costs, injunctive relief, and a declaratory judgment. *Id.* ¶¶ 1, 145.

The moving defendants filed a request for a pre-motion conference on January 3, 2024—the deadline to answer or otherwise respond to plaintiff's amended complaint, *see* Nov. 30, 2023 Order (Dkt. #19); Defs.' Mot. for Pre-Mot. Conf. (Dkt. #22)—and then filed their motion to dismiss, as directed, on February 5, 2024, *see* Defs.' Mot. to Dismiss.  Moving defendants argue, *inter alia*, that plaintiff lacks standing to assert a false-arrest claim on behalf of Richardson, that plaintiff's procedural due process claim fails as a matter of law, that the remainder of plaintiff's constitutional claims against Officers Patti and Persaud fail based on qualified immunity, and that plaintiff fails to adequately plead a claim against Mayor Adams, Commissioner Caban, or the City.  Moving defendants also argue that if plaintiff's federal claims are dismissed, the Court should

3

decline to exercise supplemental jurisdiction over plaintiff's state-law claims. *See generally* Defs.' Mem. in Supp. of Mot. to Dismiss (Dkt. #25-1); Defs.' Reply (Dkt. #27). Plaintiff opposes the motion. *See generally* Pl.'s Opp'n (Dkt. #26).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)) (quotation marks omitted). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true, *Iqbal*, 556 U.S. at 678, and "draw[s] all

reasonable inferences in favor of the plaintiff." *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (citation omitted). The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678–79.

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). However, the liberal construction rule does not apply here because "the rules afforded *pro se* litigants are not relaxed when that litigant is also an attorney." *Sembler v. Attention Funding Tr.*, No. 07-CV-2493 (RJD) (LB), 2009 WL 2883049, at *1 (E.D.N.Y. Sept. 3, 2009) (citation omitted); *see Harbulak v. Suffolk County*, 654 F.2d 194, 198 (2d Cir. 1981) (noting that attorneys "cannot claim the special consideration which the courts customarily grant to *pro se* parties"); Am. Compl. ¶ 58 (explaining that plaintiff is "a licensed New York State attorney").

## DISCUSSION

The moving defendants' motion to dismiss for failure to state a claim is granted. Qualified immunity bars plaintiff's Fourth Amendment and failure-to-intervene claims, and plaintiff has failed to adequately plead a Section 1983 claim against Mayor Adams, Commissioner Caban, or the City. In addition, plaintiff has failed to adequately plead a procedural due process claim, and plaintiff's claims against the NYPD fail as a matter of law.[*] The Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims.

---

[*] Plaintiff suggests that the Court should deny the motion to dismiss because moving defendants failed to file a timely answer, Pl.'s Opp'n 1–2 (ECF pagination), but plaintiff is incorrect. Moving defendants timely filed a request for a pre-motion conference, which constitutes "timely service of a motion made pursuant to" Federal Rule of Civil Procedure 12. Individual Practice Rules of Judge Rachel P. Kovner IV.A.2.

5

## I. Qualified Immunity Bars Plaintiff's Unlawful Search-and-Seizure Claims.

Plaintiff's Fourth Amendment and failure-to-intervene claims are barred by qualified immunity, because the facts pleaded in the complaint establish that Officers Patti and Persaud had at least arguable probable cause to search plaintiff's bus and seize the bus along with any suspected contraband in it. Plaintiff's Section 1983 claims of unlawful search and seizure, and failure to intervene are therefore barred by qualified immunity. To the extent the amended complaint asserts a false-arrest claim on behalf of Richardson, plaintiff lacks standing to bring such a claim because he does not allege any barrier to Richardson asserting it for himself. *See TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, 700 F. Supp. 2d 253, 267–68 (E.D.N.Y. 2010); *Rover Pipeline LLC v. Zwick*, No. 22-3370, 2022 WL 17336502, at *4–5 (6th Cir. Nov. 30, 2022).

### A. Officers Patti and Persaud's search and seizure are protected by qualified immunity.

Qualified immunity bars plaintiff's claims based on Officers Patti and Persaud's search of plaintiff's bus and seizure of the vehicle and its contents. The "automobile exception . . . permits police to conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Patterson*, 25 F.4th 123, 150 (2d Cir. 2022) (quotation marks and citation omitted). Police are entitled to seize any contraband or evidence of a crime discovered during such a search. *E.g.*, *id.* at 152; *United States v. Jones*, 893 F.3d 66, 71, 73 (2d Cir. 2018). Officers also need not "obtain a warrant before seizing an automobile from a public place when they have probable cause to believe that it is forfeitable contraband." *Florida v. White*, 526 U.S. 559, 561 (1999).

Moreover, "[i]n the context of a warrantless search and arrest, an officer is entitled to qualified immunity if the officer had at least 'arguable probable cause.'" *Serrano v. City of New York*, 793 F. App'x 29, 30 (2d Cir. 2019) (quoting *Kass v. City of New York*, 864 F.3d 200, 206

6

(2d Cir. 2017)).  Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 30 (citation omitted).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). While qualified immunity is an affirmative defense ordinarily asserted in an answer, it provides a valid basis to grant "a Rule 12(b)(6) motion [where] the complaint itself establishe[s] the circumstances required as a predicate to a finding of qualified immunity." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quotation marks and citation omitted).

Here, Officers Patti and Persaud had at least arguable probable cause to search plaintiff's bus and seize it and its contents based on an apparent violation of New York City's general vendor law.  New York City's general vendor law, *see* N.Y.C. Admin. Code §§ 20–452 *et seq.*, "regulates the retail sale of non-food goods and services in . . . public spaces." *Al-Amin v. City of New York*, 979 F. Supp. 168, 169 (E.D.N.Y. 1997).  A "'general vendor' is defined as '[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, [non-food] goods and services . . . in a public space.'" *Ibid.* (quoting N.Y.C. Admin. Code § 20-452(b)) (alterations original).  "A general vendor of non-food goods and services, except for exclusively written material, must obtain a general vendor's license from the Department of Consumer [and Worker Protection]." *Ibid.* (quoting N.Y.C. Admin. Code § 20-453).  General vendors are prohibited from "sell[ing] or offer[ing] for sale any item directly from any parked or double parked motor vehicle." N.Y.C. Admin. Code § 20-465(o).  "[A]ny vehicle . . . used by an unlicensed general vendor in violation of section 20-453" is subject to seizure by the police and forfeiture.  N.Y.C. Admin. Code § 20-

7

468(c). Unlicensed general vending is "a misdemeanor punishable by a fine," "imprisonment for not more than three months," or both. N.Y.C. Admin. Code § 20-472(a).

The amended complaint establishes that Officers Patti and Persaud had at least arguable probable cause to conclude that Richardson was unlawfully conducting unlicensed general vending from plaintiff's bus. Plaintiff does not dispute that officers had probable cause to believe that Richardson was "engaged in the sale of cannabinoid hemp products," from plaintiff's vehicle, Am. Compl. ¶ 44, when they approached. After all, Richardson was inside the vehicle, which was parked with its engine off; the vehicle bore a banner identifying it as "Bugzy's Bud spot"; and a "license to sell Hemp . . . from [the] Office of Cannabis Management" and a "Certificate of Authority to collect sales tax [were] displayed in [its] window." *Id.* at ¶¶ 6–7, 46. Officers further had reason to believe that Richardson was conducting this activity without a general vendors license, because when "the Defendant officers . . . question[ed] [Richardson] as to the vehicle and inquired if the vehicle was licensed," *id.* ¶ 47, Richardson did not produce a general vendors license, instead showing the officers only "the vehicle['s] insurance, and registration" along with plaintiff's state-issued certificate of authority and retail hemp license, *id.* ¶ 48. The officers therefore had probable cause to believe that Richardson was engaged in unlicensed general vending from plaintiff's parked bus. *See People v. Dunbar*, 899 N.Y.S.2d 217, 217 (App. Div. 2010) ("Defendant's actions and spontaneous statements to the police reasonably conveyed that he had been selling jewelry without a vendor's license, and thus provided probable cause for his arrest."); *see also, e.g.*, *Wang v. City of New York*, No. 05-CV-4679 (AKH), 2008 WL 2600663, at *3 (S.D.N.Y. June 26, 2008) (dismissing false-arrest claims where complaint's allegations showed that plaintiffs were engaged in likely violations of time and place restrictions for general vending under N.Y.C. Admin. Code § 20-453); *People v. Sow*, 101 N.Y.S.3d 701, at *1 (App.

Term. 2018); *People v. Hui Chen*, 901 N.Y.S.2d 909, at *6–7 (Crim. Ct. 2009).  Given such probable cause, the officers could execute a warrantless seizure of both the bus and its contents consistent with the Fourth Amendment.  *See White*, 526 U.S. at 561; N.Y.C. Admin. Code § 20-468(c).

Plaintiff principally suggests that officers lacked probable cause to believe that Richardson was violating the law because plaintiff had a state-issued retail hemp license.  But while the state law under which that license was issued preempts local ordinances "pertaining to . . . cannabinoid hemp licenses," N.Y. Cannabis Law § 131(2), plaintiff provides no authority for the proposition that this state-issued license exempted him from compliance with generally applicable local regulations like New York City's general vendor laws.  *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 119.1(b) (listing various kinds of preempted local regulations such as "a special fee that is specific to cannabis businesses").  In fact, state law expressly provides that a retail hemp license is "only for the premises licensed," N.Y. Cannabis Law § 126(1), which, in plaintiff's case, is an address distinct from where plaintiff alleges the officers seized his bus, *see* N.Y. Comp. Codes R. & Regs. tit. 9, § 114.6(a)(2) (requiring that retail hemp licenses specify the "address of the real property . . . where the licensed activities may take place); Am. Compl. Ex. 1 (listing "107-20 142 Street, Jamaica, NY 11435" on plaintiff's retail hemp license); *id.* ¶ 44 (noting plaintiff's bus was "in the vicinity of Linden Boulevard and 165th Street" in Queens when it was seized by officers). And the license that plaintiff alleges was shown to Officers Patti and Persaud states that the "Cannabinoid Hemp License . . . holder must comply with all applicable state *and local* laws and regulations."  Am. Compl. Ex. 1 (emphasis added).

At minimum, it was objectively reasonable for Officers Patti and Persaud, upon observing a violation of the city's general vendor laws and being presented with a state license purporting to

9

require compliance with such laws, to find probable cause that Richardson was engaged in illegal activity in plaintiff's bus. That would remain the case even if the general vendor law was in fact preempted by the state licensing scheme. *See, e.g.*, *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (holding that the "reasonable suspicion" required for a valid traffic stop "can rest on a [reasonable] mistaken understanding of the scope of a legal prohibition"); *Michigan v. DeFillippo*, 443 U.S. 31, 37–38 (1979) (holding that officer had probable cause where "the conduct observed violated a presumptively valid ordinance" even though the ordinance was later held unconstitutional); *Pitiger v. City of New York*, No. 02-CV-6616 (JSR), 2003 WL 22251207, at *2 (S.D.N.Y. Sept. 30, 2003) (holding that officer had probable cause to arrest plaintiff for violating New York City vending license requirement even though plaintiff possessed a state license that might have preempted the city's regulation).

Plaintiff's claims against Officers Patti and Persaud as it pertains to their alleged search and seizure are therefore barred by qualified immunity.

### B. Plaintiff's failure-to-intervene claims are similarly barred by qualified immunity.

Qualified immunity also bars plaintiff's claims that Officers Patti and Persaud failed to intervene to prevent a constitutional violation.

Police officers have "an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers," *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988), but they are liable for damages only if their failure to intervene "permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As explained above, plaintiff has not alleged facts indicating that officers violated his clearly

established statutory or constitutional rights. Accordingly, plaintiff's failure-to-intervene claims are dismissed. *See, e.g.*, *Holland v. City of New York*, 197 F. Supp. 3d 529, 549–50 (S.D.N.Y. 2016).

## II. The Amended Complaint Fails to Adequately Plead a Claim Against Mayor Adams, Commissioner Caban, or the City.

Plaintiff's claims against Mayor Adams, Commissioner Caban, and the City are dismissed. Plaintiff's amended complaint does not adequately allege that Mayor Adams or Commissioner Caban participated directly in the officers' alleged misconduct, or that there existed an unofficial policy or custom under which that misconduct occurred. The amended complaint also lacks factual allegations that plausibly state a claim against the City for failure to adequately train or supervise the officers, assuming *arguendo* that plaintiff even asserts such a claim.

Supervisory officials such as Mayor Adams and Commissioner Caban may not be held liable under Section 1983 "for the conduct of a lower-echelon employee solely on the basis of respondeat superior." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991). Instead, a plaintiff may only bring a claim against supervisory officials by alleging the "personal involvement of defendants in [the] alleged constitutional deprivations." *Hawthorne ex rel. Hawthorne v. County of Putnam*, 492 F. Supp. 3d 281, 293 (S.D.N.Y. 2020); *see Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Personal involvement can be established by showing, *inter alia*, that the individual defendant "participated directly in the alleged constitutional or statutory violation" or "created a policy or custom under which unlawful practices occurred." *Sylla v. N.Y.C. Dep't of Educ.*, 664 F. Supp. 3d 311, 332 (E.D.N.Y. 2023) (brackets omitted) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

Municipalities such as New York City are also "not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Instead, they can

11

be held liable under Section 1983 only if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978); *see Connick*, 563 U.S. at 60–61.  A plaintiff who seeks to hold a municipality liable under Section 1983 must allege (1) "an official policy or custom," that (2) "cause[d] the plaintiff to be subjected to," (3) a "denial" of a federally guaranteed right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  A plaintiff can allege a municipal policy or custom by pointing to "decisions of a government's lawmakers, the acts of its policymaking officials, [or] practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of [Section] 1983."  *Ibid.*  Mere conclusory allegations that a policy, custom, or practice has led to a violation are insufficient to support a Section 1983 claim.  *See Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990).

### A. The amended complaint fails to adequately allege Mayor Adams' or Commissioner Caban's direct participation.

Plaintiff fails to adequately plead that either Mayor Adams or Caban directly participated in the officers' alleged misconduct.  Plaintiff's core allegation regarding Mayor Adams and Caban is that they "openly supported" and "did encourage" the "confiscat[ion] and arrest [of] alleged unlawful sellers [of] cannabis without distinguishing that not all cannabis [is] a controlled substance."  Am. Compl. ¶¶ 69–70.  But neither this conclusory statement nor any other in the amended complaint plausibly suggests that Mayor Adams or Caban directly authorized or otherwise supported the specific conduct of Officers Patti and Persaud involving plaintiff.  *See Wilson v. Celestin*, No. 17-CV-5592 (MKB), 2018 WL 2304762, at *3 (E.D.N.Y. May 18, 2018) (collecting cases and holding that, "[w]ithout any facts further supporting" the allegation that one

12

defendant's "conduct was 'approved by'" the supervisory defendant, plaintiff had "not adequately pled that [the supervisory defendant] was personally involved").

### B. The amended complaint fails to adequately allege the existence of an unofficial policy or custom under which the alleged misconduct occurred.

Plaintiff also fails to adequately plead the existence of an unofficial policy or custom that caused him constitutional injury, as necessary to establish either the personal involvement of Mayor Adams and Caban or a *Monell* claim against the City.

The amended complaint lacks any allegation regarding a formal municipal policy. *See generally* Am. Compl. Plaintiff instead argues that an unofficial policy or custom can be inferred from his allegation that Mayor Adams and Commissioner Caban encouraged and supported the "confiscat[ion] and arrest [of] alleged unlawful sellers [of] cannabis without distinguishing that not all cannabis [is] a controlled substance." Am. Compl. ¶¶ 69–70; *see* Pl.'s Opp'n 4 (ECF pagination). But plaintiff offers no factual allegations suggesting that the policy or custom he describes plausibly exists and contributed to the misconduct he alleges. Instead, plaintiff "only points to the alleged constitutional deprivations that he suffered," and "fails to identify any other incidents that would indicate a pattern or practice." *Kiss v. Torres*, No. 21-CV-10391 (KMK), 2024 WL 1210941, at *23 (S.D.N.Y. Mar. 19, 2024) (collecting cases). That is insufficient to adequately plead either Mayor Adams' or Commissioner Caban's personal involvement or a *Monell* claim against the City. *See Nixon v. City of New York*, 668 F. Supp. 3d 143, 152 (E.D.N.Y. 2023) (dismissing *Monell* claim); *Mazyck v. Keller*, 531 F. Supp. 3d 630, 649–50 (W.D.N.Y. 2021) (dismissing "supervisory liability" claim alleging that various senior officials "create[ed] a policy or custom under which inmates were abused by corrections officers"); *see also, e.g.*, *Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023) (collecting cases and observing that "courts dealing with *Monell* claims have disregarded the use

13

of conclusory allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct" (quotation marks and citation omitted)).

Plaintiff has thus failed to adequately plead the existence of an unofficial policy or custom that caused him constitutional injury. Having failed to adequately plead the personal involvement of Mayor Adams or Commissioner Caban in plaintiff's alleged constitutional injury, either by their direct participation or their support for a violative policy or custom, plaintiff's claims against both defendants are dismissed.

### C. The amended complaint fails to adequately allege a claim against the City for failing to adequately train or supervise the officers.

Plaintiff also fails to adequately plead a *Monell* claim against the City on the basis of its alleged failure to adequately train or supervise Officers Patti and Persaud, assuming *arguendo* that plaintiff even asserts such a claim.

To establish a *Monell* claim for failure to train, "a plaintiff must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Alwan v. City of New York*, 311 F. Supp. 3d 570, 579 (E.D.N.Y. 2018) (quoting *Wray*, 490 F.3d at 196). To establish a *Monell* claim for failure to supervise, a plaintiff must show that the city was "faced with a pattern of misconduct and [did] nothing, compelling the conclusion that the [city] has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). Both failure-to-train and failure-to-supervise claims require that the city's "need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Ibid.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)) (noting that a deliberate indifference showing is required for both failure-to-train and failure-to-supervise claims)).

14

Even if the amended complaint were read to assert a *Monell* claim against the City alleging it "did negligently hire, retain, train, and supervise defendants," Am. Compl. ¶¶ 110–11; *see id.* ¶¶ 18, 22, plaintiff again fails to put forth factual allegations plausibly suggesting the City has exhibited the sort of persistent failure to train or supervise necessary to support such a claim. Courts in this circuit routinely hold that such conclusory allegations, paired with factual allegations relating only to a single violation suffered by the plaintiff, are insufficient to adequately plead a *Monell* claim. *See, e.g.*, *Forrest v. County of Greene*, 676 F. Supp. 3d 69, 77 (N.D.N.Y. 2023) (dismissing *Monell* claims, including for failure to train and supervise, because "plaintiffs fail to allege any facts, beyond the isolated events" they experienced); *Gomez v. Westchester County*, No. 18-CV-244 (NSR), 2021 WL 4443379, at *7 (S.D.N.Y. Sept. 28, 2021) ("Plaintiff's claim that [defendants] were aware of [unsanitary food-safety practices] and failed to train, supervise, or discipline their employees is a legal conclusion rather than a factual allegation sufficient to state a *Monell* claim."); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *11 (E.D.N.Y. May 7, 2021) ("Plaintiff offers only conclusory statements in support of his claims that the City failed to train and supervise its employees.").

Plaintiff has therefore failed to adequately plead a *Monell* claim for the City's failure to train or supervise the officers. Plaintiff's Section 1983 claims against the City are thus dismissed.

### III. Plaintiff Fails to State a Claim for Deprivation of Property Without Due Process.

Plaintiff's amended complaint does not adequately plead a claim for deprivation of property without due process, in violation of the Fourteenth Amendment.

To prevail on a procedural due process claim under Section 1983, a plaintiff must (1) "identify a property right," (2) "show that the state has deprived him of that right," and (3) "show that the deprivation was effected without due process." *Tang v. Visnauskas*, 847 F. App'x 24, 26 (2d Cir. 2021) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)). In

15

assessing whether a deprivation of property "was effected without due process," courts distinguish between "(a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citation omitted). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Ibid.* (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Ibid.* Then, the availability of a post-deprivation remedy will not automatically satisfy due process. *Ibid.*

Plaintiff fails to adequately allege a procedural due process claim. Plaintiff's amended complaint alleges that he was deprived of property without due process when officers seized his bus and various property on the bus, and after "several hours," only released his bus. Am. Compl. ¶¶ 60, 63–65, 78.

Plaintiff fails to adequately allege the existence of an established state procedure by which he was deprived of his property. As discussed above, the amended complaint does not adequately plead the existence of a municipal policy or custom of seizing lawful forms of cannabis or the personal involvement of Mayor Adams or Commissioner Caban in the seizure of plaintiff's property. *See supra* pp. \*\*–\*\*; *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 655–56 (S.D.N.Y. 2021) (holding that "the alleged deprivation of Plaintiff's property was, as a matter of law, random and unauthorized" where the complaint "fails to allege any facts suggesting the existence of a policy, custom, or practice that directly resulted in the deprivation of property" or any personal involvement by "a high-ranking official" (citation omitted)); *Kneitel v. Rose*, No. 19-CV-3742 (PKC), 2019 WL 3804678, at \*3 (E.D.N.Y. Aug. 13, 2019) (similar). And plaintiff does not

adequately allege the operation of any state procedure in the deprivation of his bus and cannabinoid hemp products, only that they were "stolen" by the "Defendant officers" and plaintiff's hemp products were never returned even though plaintiff was advised that the bus would be released that day.  *See* Am. Compl. ¶¶ 44, 60, 63, 68; *Martinez v. City of New York*, 564 F. Supp. 3d 88, 98 (E.D.N.Y. 2021) (holding that alleged deprivation was random and unauthorized where plaintiff alleged that officers stole "money and gift cards from her, and then neither voucher[ed] nor return[ed] those items"); *Cantave v. N.Y.C. Police Officers*, No. 09-CV-2226 (CBA) (LB), 2011 WL 1239895, *7 (E.D.N.Y. Mar. 28, 2011) (dismissing due process claim because plaintiff's "car . . . was vouchered and [ultimately] returned" and "plaintiff has not alleged any facts suggesting that any confiscation of [his other] property was other than 'random or unauthorized'").

Because plaintiff fails to adequately plead a "deprivation [] pursuant to an established state procedure," he must plausibly allege the lack of any "meaningful post-deprivation remedy" for the deprivation of his seized cannabinoid hemp products.  *Rivera-Powell*, 470 F.3d at 465.  But courts in this circuit have consistently held that New York state law provides an adequate post-deprivation remedy for such property seizures, such as a state-law claim for conversion or a court of claims action pursuant to state regulation.  *See, e.g.*, *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) ("New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." (citation omitted)); *Stancati v. County of Nassau*, No. 14-CV-2694, 2015 WL 1529859, at *6 (E.D.N.Y. Mar. 31, 2015) ("New York state law provides an adequate post-deprivation remedy in the form of a state law cause of action for conversion, which would fully compensate [p]laintiff for her alleged property loss.").

Plaintiff's due-process claim is therefore dismissed.

17

### IV. Plaintiff's Claims Against the NYPD Fail as a Matter of Law.

Plaintiff cannot assert any claims against the NYPD.

A "district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard. *Grant v. County of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013) (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir.1991)). Under the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for violation of any law shall be brought in the name of the city of New York and not that of any agency except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396.

Plaintiff cannot assert claims against the NYPD because it is not a suable entity. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[The plaintiff] sued the City of New York and the NYPD separately. The district court correctly noted that the NYPD is a non-suable agency of the City."). Plaintiff was given notice of that basis for dismissal and an opportunity to be heard, *see* Sept. 18, 2024 Order to Show Cause, but has failed to provide a persuasive reason why his claims against the NYPD should not be dismissed.

Plaintiff's claims against the NYPD are therefore dismissed *sua sponte*. *See, e.g.*, *Waite v. Gonzalez*, No. 21-CV-2506 (PKC) (RLM), 2023 WL 2742296, at *6 (E.D.N.Y. Mar. 31, 2023); *King v. City of New York*, No. 16-CV-4299 (CBA) (PK), 2018 WL 4568798, at *3 & n.4 (E.D.N.Y. Sept. 24, 2018).

### V. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claims.

Having dismissed all of plaintiff's federal claims, the Court declines to retain jurisdiction over plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3). Four factors bear on whether the exercise of supplemental jurisdiction is appropriate: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Generally,

18

where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *see Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013); *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). Plaintiff has not provided a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. *See* Defs.' Mem. in Supp. 19; *see generally* Pl.'s Opp'n. The Court therefore declines to exercise supplemental jurisdiction over plaintiff's state-law claims.

## CONCLUSION

For the reasons explained above, the moving defendants' motion to dismiss plaintiff's amended complaint for failure to state a claim is granted. Plaintiff's claims against the NYPD are dismissed with prejudice, and plaintiff's remaining claims are dismissed without prejudice and with leave to amend. Plaintiff may file an amended complaint within thirty days of the date of this Order. The new complaint must be captioned "Second Amended Complaint" and shall bear the same docket number as this Order. Plaintiff is advised that the Second Amended Complaint will replace his amended complaint. All further proceedings are stayed for thirty days. The Clerk of Court is respectfully directed to terminate the NYPD from this case. If plaintiff does not file an amended complaint within thirty days, the Clerk of Court is respectfully directed to enter judgment accordingly.

SO ORDERED.

Dated: September 30, 2024             */s/ Rachel Kovner*
       Brooklyn, New York            RACHEL P. KOVNER
                                                   United States District Judge